UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 24-20079-CR-MORENO(s)(s)(s)(s)

UNITED STATES OF AMERICA

vs.

RAISHA KELLY,

    Defendant.
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR

### I.   THE LOSS FIGURE IN THIS CASE SHOULD BE $837,716

The defendant objects to the PSI which includes as relevant conduct loans that were not specifically mentioned in the Fourth Superseding Indictment ("the Indictment"). The defendant was charged with executing a scheme to defraud multiple PPP lenders during a distinct period of time. In charging the case and presenting its proof at trial, the government focused on fifteen (15) acts in execution of the scheme to defraud. These fifteen (15) acts in execution relate to loan applications submitted on behalf of those individuals named in the Indictment plus those named as Individual 1 through 6. The government introduced evidence about the loans taken out by Individual 7 but did not charge a specific count related to their loans. At trial the Jury found the defendant guilty of all of the loans charged as acts in execution of the scheme to defraud. The total amount of all the loans in the indictment was $443,895. (GX 35).[1]

In addition to the individuals listed in the Indictment, there are thirteen (13) additional PPP loan applicants not specifically named in the Indictment that are linked to the defendant by at

---

[1] While the government does not concede that the defendant is correct in his exclusion of the processing fee, it will not include it in the calculations of the loss in this case.

least one of the four criteria: 1) the applications were created by the same Internet Protocol ("IP") address, 2) the applicant made a kickback payment to the defendant, 3) the defendant received Schedule Cs from Malaina Chapman, and 4) the email addresses for the applicant used the same naming convention, always containing the applicant's first name, a period, the applicant's last name and a prefix or suffix of 00 (Exhibit 1).[2] The sum of the loans given to these individuals was an additional $393,821 (Exhibit 2).

The Sentencing Guidelines state and the United States Supreme Court has held that "it is "appropriate" that facts relevant to sentencing be proved by a preponderance of the evidence, USSG § 6A1.3, comment., and we have held that application of the preponderance standard at sentencing generally satisfies due process." *United States v. Watts* 519 U.S. 148, 156 (U.S.1997). There are more than sufficient facts for this Court to conclude by a preponderance of the evidence that the defendant should be held accountable for the loans taken out by the individuals referenced in Exhibit 1. This loss plus the loss proved at trial is the sum total of the actual fraud loss caused by the defendant.

At trial, the evidence showed that the four links discussed above had a 100 percent correlation with each loan in the defendant's wire fraud scheme, as each of the loans associated with the charged co-conspirators or Individuals 1 through 7 had at least one of these attributes— and the government proved beyond a reasonable doubt that all of those loans were fraudulent. What innocent explanation can there be for the defendant's receipt of tax documents from Malaina Chapman? The fact that Schedule Cs from a convicted fraudster like Chapman[3] were submitted

---

[2] The Government will be calling Special Agent Curtis Wilkins to introduce Exhibits 1 and 2 and explain how the government calculated loss.
[3] On March 14, 2025, Chapman pled guilty to one count of conspiracy to commit wire fraud in case 24-20321-CR-RAR.

in support of these loan applications, standing alone would be enough evidence for this Court to find by a preponderance of the evidence that the loans were fraudulent, and the defendant was responsible for their submission.  Likewise, the fact that so many of the loans in Exhibit 1 originated from the same IP address that the defendant used to submit her own loan applications and the applications of all but one of the people referenced in the Indictment is more than sufficient proof for this Court to conclude that the defendant should be held accountable for these loans. But these two facts coupled with the other similarities (*e.g.*, the payment of kickbacks, the use of dummy email addresses), provide more than sufficient evidence for this Court to hold the defendant accountable for these loans when fashioning a just sentence in this case.

For these reasons, the government is asking this Court to include $393,821 in its loss calculation and hold that under a relevant conduct analysis the total loss is $837,716.

## II. **THE DEFENDANT WAS A LEADER/ORGANIZER OF THIS OFFENSE**

USSG 3B1.1 provides that a defendant should receive a four (4) level enhancement if he is a leader or organizer of criminal activity that involved five (5) or more participants or was otherwise extensive. In determining the applicability of this enhancement, the Court must consider the "exercise of decision-making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of proceeds" among other factors. As a preliminary matter there can be no dispute that this conspiracy involved five (5) or more persons or was otherwise extensive.   The government proved the involvement of the six (6) individuals who plead guilty for their role in this conspiracy, Racquel Marks, Tarrance Lightbourn, Cortira Gray, Ann Gilchrist, Widny Thibaud and Ricky Norwood.   Those individuals alone plus the defendant satisfy the requirement of five (5) or more persons.   The government also

introduced significant evidence that the defendant conspired with those individuals referred to as Individuals 1 through 7 in the Indictment.

The defendant deserves the leader/organizer enhancement because the government proved that the defendant received a larger share of the fraud proceeds than any other member of the conspiracy. At trial, the evidence showed that the total amount of the loan proceeds received by all members of the conspiracy was $443,985 (GX35). Of that $443,985, the defendant received $101,569 (GX 37). No other member of the conspiracy, aside from her domestic partner Widny Thibaud, received more than $40,000 because all of the other members of the conspiracy had to pay twenty-five (25) percent of their fraud proceeds to the defendant. Clearly, the defendant received a larger share of the proceeds, and this factor weighs in favor of applying this enhancement.

An application of the other factors also reveals that Kelly is deserving of this role enhancement for several reasons. First, no member of this conspiracy exercised more "decision making authority" than the defendant." She initiated the application process, she decided how much money to seek from the lenders, she provided the falsified tax documents, and she was the person that dictated the terms of what information each person needed to provide to her and the amount of the kickback that they had to pay (GX 15H). Likewise, the nature of her "participation in the commission of the offense" was greater than the other co-conspirators for the same reasons. She was the person that started the application process, obtained the false tax documents, created the dummy email addresses and forwarded the emails to her co-conspirators while shielding her involvement in the scheme. The only co-conspirator who did something other than providing their name and biographical information to the defendant, was Ann Gilchrist who referred Racquel

Marks to the defendant. Thus, because the defendant's decision-making authority and the nature of her participation was greater than her co-conspirators, this factor weighs in favor of applying this enhancement.

But perhaps just as importantly, the Court should look to the fact that there was no other supervisor, manager, or organizer in this case. The entire conspiracy was Kelly conspiring with Malaina Chapman—to learn about how to conduct this PPP fraud ring and to create false Schedule C tax returns—and then Kelly doing all of the rest of the fraudulent work on behalf of each and every individual whom she recruited into her conspiracy. She was no "middleman" because there could be no middleman in the shallow scheme that she engineered, with herself as the only "top." She—and no one else—orchestrated the fraudulent applications with each of the co-conspirators, and she—and only she—ultimately received all of the kickback payments (including the money that Raquel Marks paid her through Ann Gilchrist).

The defendant is simply incorrect when she states, "there is simply no evidence of recruitment" (DE 302:3). Tarrance Lightbourn testified that he was recruited by the defendant. In debriefings, Cortira Gray identified the defendant as the person that recruited her into the conspiracy.[4] The government also introduced an email in which she explicitly recruited an applicant and said "I will not begin your application" until the applicant agreed that they were willing to pay her a twenty-five (25) percent kickback (GX 15H). Given these facts, the "recruitment of accomplices" factor weighs in favor of the application of this enhancement.

Lastly, the defendant's reliance on the case of *United States v. Reneslacis* 349 F.3d 412 (7th Cir. 2003) is misplaced because the facts are distinguishable. In *Reneslacis,* the defendant

---

[4] Special Agent Wilkins will testify to these facts at the sentencing hearing.

acted merely as a recruiter for a travel agency that was purportedly able to provide immigration documents in exchange for a bribe paymnet . The Court analogized the defendant's role to that of a broker and held that "by referring immigrants who wanted to become permanent residents to Golden Travel—with the expectation that he would receive a portion of the bribes—his role was the same as a broker in a drug case who is compensated for referring an addict to a dealer."*Id.* at 418.  Here the defendant was not merely acting as a broker referring applicants to someone else who orchestrated the fraudulent conduct. Quite the opposite. The defendant was the orchestrator of this fraud. She was the person setting the rate of the referral fee and telling her recruits that she would not begin working on their applications unless they agreed to her fee. She was the person who decided how much money to ask for in the applications. She was the person that created or obtained the fake tax documents, submitted the applications, created the fake email addresses and forwarded the necessary emails to her co-conspirators.  She was the person that recruited her co-conspirators. Comparing her role to that of a mere broker in a drug or immigration scheme ignores too many of her actions in this case and this Court should not rely upon the holding in *Reneslacis* in deciding this issue.

      For the reasons stated above the Government is asking this Court to find that the defendant is deserving of a four (4) level enhancement for being a leader/organizer of this conspiracy.

**{ this space intentionally left blank}**

## CONCLUSION

For the reasons stated above, the Government is asking the Court to overrule the defendant's objections to the PSR.

                                        Respectfully submitted,

                                        HAYDEN P. O'BYRNE
                                        UNITED STATES ATTORNEY

By:    s/Daniel Bernstein
        Daniel Bernstein
        Florida Bar No. 0017973
        Telephone:   (305) 961-9169
        Facsimile: (305) 530-6168
        Daniel.Bernstein@usdoj.gov

## ERTIFICATE OF SERVICE

I hereby certify that on April 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

8